IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TARIQ RASHAD AMIN,
    Petitioner,

v.                                         Civil No. 3:22cv459 (DJN)

HAROLD W. CLARKE,
    Respondent.

**MEMORANDUM OPINION**

Tariq Rashad Amin, a Virginia state prisoner proceeding with counsel, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court for the City of Richmond, Virginia ("Circuit Court").[1] The Circuit Court convicted Amin of malicious wounding, use of a firearm in the commission of malicious wounding, possession of cocaine with intent to distribute, possession of heroin with intent to distribute and two counts of possession of a firearm while possessing drugs with intent to distribute. (*Id.* at 2.)

### I. PERTINENT PROCEDURAL HISTORY

Amin's August 25, 2015 jury trial on the above charges ended in a mistrial when the jury was not able to reach a unanimous verdict after deliberating for less than an hour and a half. (ECF No. 15, at 1580, 1823–24.) In a subsequent trial conducted on January 24, 2017, Amin was found guilty on all charges.

---

[1]     The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation and spelling in the quotations from the parties' submissions.

On direct appeal, the Court of Appeals of Virginia summarized the relevant evidence of Amin's guilt as follows:

> During the early morning hours on November 9, 2012, Earnest Abernathy and his brother were leaving a bar when they observed a verbal argument outside involving Dante Lewis, whom Abernathy knew. Lewis, "a little dude," was arguing with "a big guy" who had "two to three people with him." As Abernathy and his brother walked to their car, the "argument was getting intense." Abernathy saw "two dudes" wearing baseball caps approach a nearby car. Abernathy's brother got into the driver's seat of their car, Abernathy entered the back, and Lewis got in the front passenger seat. As they were leaving the area, Lewis was "hanging out the window arguing" and Abernathy saw the "two dudes up the block" produce a gun and start shooting. Abernathy saw Lewis "fall across the seat." Lewis indicated that he had been shot so Abernathy and his brother took Lewis to a nearby hospital. Lewis had been shot in his chest and leg.
>
> Augustus Fitch was tending bar at McCormick's Irish Pub, a restaurant near the bar, at the time of the shooting. He was standing near the restaurant's window when he observed a man directly across the street raise his arm and fire a gun. Fitch ducked down behind the bar, remained there for ten to fifteen seconds and heard a "lot more shots." Fitch peeked up and saw the shooter still standing across the street. The shooter then calmly walked across the street towards Fitch and "just was basically staring at Fitch." Fitch viewed the man from approximately ten feet away after the man crossed the street. Fitch identified appellant at trial as the shooter and confirmed that there was no "doubt in [his] mind" that appellant fired the shot. Fitch had also identified appellant on the day of the shooting from a photographic lineup. When Fitch saw appellant's photograph, he immediately recognized appellant, stating "this is the guy."
>
> The police recovered 9mm shell casings near a black Lincoln Town Car parked near the bar, and recovered a bullet that had lodged in a picture frame inside McCormick's and another bullet that had lodged in the back seat of a parked car. Inside the Town Car, the police found items bearing appellant's name, including a passport, a prescription bottle, and a recent summons. On the Town Car's back seat, they found a Ruger P89 9mm pistol. Forensic analysis proved that the 9mm cartridge cases, the bullets recovered from inside McCormick's and the parked car, and a third bullet recovered from Lewis at the hospital, were all fired from the gun found in the Town Car.
>
> In the driver's side armrest of the Town Car, the police found a large plastic bag containing smaller bags which held a total of thirty-two grams of cocaine and twenty-nine grams of heroin. The street value of the drugs exceeded $12,000, and expert testimony established that the amount and packaging of the drugs as inconsistent with personal use.
>
> When interviewed by the police, appellant admitted that he was at the scene on the night of the shooting, but he denied having fired any shots. Appellant's mother stated that she owned the Town Car, but she claimed that numerous people had access to the vehicle.

(ECF No. 13-3, at 1–3 (alteration in original)).

Amin challenged the sufficiency of the evidence arguing "that the trial court failed to exclude 'the very real hypothesis that the shooter is another individual' and that it 'is also a reasonable hypothesis that the drugs belonged to another individual.'" (*Id.* at 3.) In rejecting those arguments, the Court of Appeals of Virginia stated:

> Fitch identified appellant as the shooter, both from a photo lineup shortly after the shooting and again at trial. Fitch saw appellant at close range as appellant crossed the street towards him after appellant fired the weapon. Appellant looked directly at Fitch who was approximately ten feet away inside the restaurant. Fitch immediately recognized appellant as the shooter when he saw appellant's photograph. Fitch's identification of appellant as the shooter was corroborated in part by the forensic evidence linking the gun found in the Town Car to appellant. The car belonged to appellant's mother, his personal items were inside the car, and he admitted that he was at the scene at the time of the shooting. Finally, Fitch saw appellant standing and firing the weapon in [the] very spot from where the police recovered the cartridge casings.
> . . . .
> Here, Fitch's identification of appellant as the shooter, combined with the other evidence presented at trial, was sufficient to prove that appellant was in fact the gunman and that he possessed the contraband recovered from the vehicle, including the firearm and the large quantity of drugs.

(*Id.* at 4–5.)

After the Supreme Court of Virginia refused Amin's petition for appeal, Amin, proceeding *pro se*, filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. (ECF No. 14, at 2.) After the respondent moved to dismiss, Amin, by counsel, filed a reply in which he sought to raise additional claims. The Supreme Court of Virginia dismissed the claims raised in Amin's petition for a writ of habeas corpus and rejected Amin's attempt to raise new claims in his reply. (ECF No. 15, at 1853–59.) With respect to the claims raised in the reply, the Supreme Court of Virginia stated:

> In his reply, petitioner alleges for the first time that he was denied the effective assistance of counsel when counsel failed to argue the victim: (1) never identified petitioner as the person who shot him, (2) lied about having and firing a gun, (3) admitted he was drunk on the night of the shooting, and (4) had an

3

> altercation with two individuals outside a bar before the shooting and provided descriptions of those individuals that did not match petitioner. Petitioner also argues for the first time that counsel was ineffective for failing to move to suppress evidence seized from a Lincoln Town Car, which was owned by petitioner's mother, on the ground that the police illegally seized the car when they towed it from the crime scene without a warrant based only on an apparent bullet hole in the vehicle, and subsequently searched it based on a warrant lacking probable cause. In addition, petitioner alleges for the first time that he was denied the effective assistance of counsel when counsel failed to use Fitch's interview with Borgese to impeach Fitch's trial testimony.
>
> The Court holds these claims are not properly before the Court. The facts of these claims were known to petitioner at the time he filed his petition for a writ of habeas corpus, and petitioner neither sought nor was granted leave to amend his original petition to add these claims. *See* Code § 8.01-654(B)(2) (a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing"); Rule 5:7(e) (a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the Court to do so.)

(*Id.* at 1859.)

Thereafter, Amin, with counsel, filed his § 2254 Petition with this Court. Amin contends that he is entitled to relief upon the grounds that he raised before the Supreme Court of Virginia in his reply.

## II. AMIN'S GROUNDS FOR FEDERAL HABEAS RELIEF

Amin contends that he is entitled to relief upon the following grounds:

Claim A:
> Counsel failed to present evidence that D[a]nte Lewis: (1) never identified Petitioner as the person who shot him; (2) lied about having and firing a gun; (3) admitted he was drunk on the night of the shooting; (4) had an altercation with two individuals outside the bar moments before the shooting and provided descriptions of those individuals that did not match the Petitioner; and, (5) during that confrontation, the main combatant pulled out a gun and Lewis smacked the gun out of his hand. This evidence would have shown that the Petitioner was not the shooter of Lewis and therefore not the person who put the firearm in the back seat and locked the car within moments of the shooting, a car which had the drugs in question.

(ECF No. 1, at 10.)

4

Claim B:
> Counsel failed to present evidence that Fitch (1) followed the person he later identified as the Petitioner and saw him walk all the way to Main Street and make a right, and (b) observed that same person place a firearm in his waistband. Counsel further failed to argue to the jury that, based on this additional evidence as well as the other testimony from Fitch, the Petitioner could not have been the person who shot Lewis and placed the related gun in the Lincoln.

(*Id.* at 16.) Respondent correctly notes that the above claims are nominally defaulted. Nevertheless, given the lack of merit of Amin's claims and the current state of the law, judicial efficiency dictates simply proceeding to the merits of Claims A and B rather than discussing procedural default principles and then deciding whether review is warranted. *See Martinez v. Ryan*, 566 U.S. 1, 21-22 (2012) (Scalia, J., dissenting) (observing that as "a consequence of today's decision the States will always be forced to litigate in federal habeas, for all defaulted ineffective-assistance-of-trial-counsel claims (and who knows what other claims) . . . the validity of the defaulted claim (where collateral-review counsel was not appointed)"); *Brown v. Clarke*, 2021 WL 357353, at *1 (E.D. Va. Feb. 2, 2021) (following a similar procedure).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

5

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing the ineffective assistance of counsel claims, the Court does not need to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B.    Alleged Failure to Present Evidence Regarding Dante Lewis

In Claim A, Amin faults counsel for failing to present evidence regarding Dante Lewis, the individual shot on November 9, 2012. Initially, in Claims A(1) through A(3), Amin faults counsel for not presenting evidence that Lewis never identified Amin as the person who shot him and that Lewis was drunk and lied about possessing and firing a gun. The prosecution readily admitted in their opening and closing statements that Lewis was not present to testify and therefore that the prosecution was not relying upon Lewis to identify his shooter. (ECF No. 13-2, at 57, 202.) Additionally, the prosecution acknowledged that Lewis had a gun and had fired at his shooter. (*Id.* at 57, 92–93.) Amin also fails to explain the value for the defense of Lewis's admission that he was drunk on the night in question. Amin fails to demonstrate that counsel acted unreasonably by failing to present evidence or arguments with respect to issues described in Claim A(1) through A(3). Discussion of Claims A(4) and A(5) requires a slightly more nuanced view of the evidence presented at trial.

In Claim A(4), Amin faults counsel for failing to elicit evidence that Lewis had an altercation with two individuals outside the bar moments before the shooting and provided descriptions of those individuals that did not match Amin. Additionally, in Claim A(5), Amin complains that counsel failed to introduce evidence that during Lewis's verbal altercation, Lewis told the police that one of the people with whom he was arguing pulled out a gun and that Lewis smacked the gun out of his hand. The prosecution, however, did not suggest that Lewis was shot by the individuals with whom he was arguing immediately before the shooting. Rather, the

6

prosecution presented evidence that another individual, not directly involved in the argument with Lewis, retrieved a gun from his car and shot Lewis. Therefore, counsel reasonably declined to present the evidence and argument that Amin faults him for omitting here.

Specifically, Earnest Abernathy testified that Lewis was arguing with "like two to three people with him." (ECF No. 13-2, at 85.) Abernathy stated that he persuaded Lewis to leave with him and his brother and testified: "So as we was getting in the car, out of my peripheral I noticed two dudes up the block" who were not involved in the verbal altercation. (*Id.* at 89.) Abernathy stated these "two dudes" went up the block to retrieve something from a car. (*Id.* at 89–90.) According to Abernathy, as the car in which Lewis and Abernathy were riding began to leave, Abernathy saw one of the two men raise a gun, and then he heard shots. (*Id.* at 91.)

Abernathy's testimony indicated that the individuals with whom Lewis was arguing were smaller in stature than the individuals down the block. (*Id.* at 95.) Lewis described two of the individuals with whom he was arguing as follows: one was a black male "taller than 5'9 heavyset (at least 200 lbs)," and the other he described as a black male "6'0, 150–160 lbs." (Supreme Court of Virginia habeas record at 3399.) Amin was six foot two inches tall and weighed two hundred fifty pounds. (ECF No. 14, at 131.) Hence, counsel reasonably eschewed presenting evidence regarding Lewis's description of the individuals with whom he was involved in a verbal altercation. Evidence of that ilk would have only reinforced the prosecution's evidence that Amin was one of the larger black men up the block who retrieved a firearm from his car and shot Lewis. Accordingly, Claim A(1) through A(5) will be DISMISSED.

### C. Failure to Present Impeachment Evidence Regarding Augustus Fitch

Augustus Fitch conclusively identified Amin as the shooter. During Amin's August 2015 jury trial, the defense attempted to impeach Fitch through the testimony of Helen Borges, a private investigator hired by the defense. Borgese interviewed Fitch on May 13, 2015. (ECF

No. 15, at 1757.) During that interview, according to Borgese, Fitch said he watched the shooter walk down 18th Street and saw him take a right on to Main Street. (*Id.* at 1757–58.)[2] Borgese also related that Fitch said he saw the shooter stick the firearm in his waistband. (*Id.* at 1759.) The prosecution objected to that second statement, because it was not inconsistent with any testimony provided by Fitch. (*Id.*) The Circuit Court sustained the objection with respect to the statement about the gun. (*Id.*)

Here, Amin contends that eliciting both these statements was critical to impeaching Fitch's identification of Amin as the shooter. In support of this argument, he notes that it was undisputed that the firearm that was used in the shooting was located in his mother's vehicle on 18th Street within a minute or so after the shooting. He contends that there is no way that he could have turned on Main Street with the gun and returned to 18th Street with the gun and placed it in his mother's vehicle in the short time before the police arrived on the scene. During the trial where Amin was convicted, counsel was not able to present any evidence from Borgese to impeach Fitch, because counsel failed to lay the proper foundation during Fitch's testimony. Here, the Court need not pass upon the competency of counsel's performance, because Amin cannot establish prejudice.

The Supreme Court has admonished that when "assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)); *Strickland*, 466 U.S. at 693. "*Strickland* asks whether it is 'reasonably

---

[2]  Fitch denied telling Borgese that he *saw* the shooter had made a right on Main Street. (ECF No. 15, at 1669.) Fitch asserted that he told Borgese that he had *heard* from other witnesses that the shooter had made a right onto Main Street. (*Id.*)

likely' the result would have been different." *Harrington*, 562 U.S. at 111 (citing *Strickland*, 466 U.S. at 696). Nevertheless, the Supreme Court has emphasized that "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citing *Strickland*, 466 U.S. at 693).

While not overwhelming, the circumstantial and direct evidence of Amin's guilt was compelling. It is undisputed that the firearm that shot Lewis was found immediately after the shooting, near the crime scene, in a vehicle belonging to Lewis's mother. Inside the vehicle were numerous pieces of paperwork belonging to Amin, including his passport and recent traffic tickets. Lewis's mother testified around the time of the shooting that "[s]everal people" were regularly driving the vehicle in which the firearm was found, including her brother and her nephew. (ECF No. 15, at 105.) That testimony did little to dispel the conclusion that Amin had control of the vehicle on the night of the shooting. Amin admitted to police that he was in the area of the shooting on the night of the shooting and that he owned a firearm. (ECF No. 15, at 59.) Further, Amin's build is generally consistent with the description that Abernathy provided of the individual who obtained a gun from a car shortly before the shooting.

Finally, there is Fitch's eyewitness identification of Amin as the individual who had the firearm on the night in question. The police conducted a double-blind photographic line up with Fitch shortly after the shooting. (ECF No. 14, at 677–81.) The record does not suggest in any way that the police influenced Fitch to pick a particular subject. (*Id.*) All of the individuals in the array were black, bald and appeared to have some facial hair. (*Id.* at 1023–31.) Upon seeing the fourth photo, which was a picture of Amin, Fitch immediately said "this is the guy." (*Id.* at 682.) Fitch clarified that this was the person who had the handgun and shot it on November 9, 2012. (*Id.* at 1026.) Thereafter, at trial, Fitch testified that he had no doubt that Amin was the person whom he saw with the firearm on November 9, 2012. (*Id.* at 1266–67.) The combination

9

of these circumstances eliminates any reasonable doubt that Amin was the individual who shot Lewis. The impeachment tactics that Amin faults counsel for failing to employ are not sufficient to create a reasonable probability of a different result.[3] Accordingly, Claims B(1) & B(2) will be dismissed, because Amin fails to demonstrate prejudice.

## IV. CONCLUSION

For the foregoing reasons, Amin's claims will be DISMISSED. The Amended Motion to Dismiss (ECF No. 12) will be GRANTED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: August 18, 2023

---

[3] Amin insists that because his August 25, 2015 trial ended in a mistrial, the evidence of his guilt is insubstantial, and any different result must be the result of constitutionally deficient performance by counsel at the January 24, 2017 trial. But a review of the record from both trials indicates that Amin was merely the beneficiary of artful representation and a jury fully receptive to the arguments made by counsel at the August 25, 2015 trial.